Elizabeth J. Cabraser (State Bar No. 083151)
Roger N. Heller (State Bar No. 215348)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
rheller@lchb.com

Jason L. Lichtman (*pro hac vice* forthcoming)
Danna Z. Elmasry (*pro hac vice* forthcoming)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
jlichtman@lchb.com
delmasry@lchb.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOSE MORAN, *individually and on behalf of others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>PAYPAL INC. and PAYPAL HOLDINGS, INC.,<br><br>Defendant. | Case No.   5:25-cv-476<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jose Moran, on behalf of himself and all other similarly situated individuals (the "Class," as defined below), brings this Class Action Complaint against Defendants PayPal, Inc. and PayPal Holdings, Inc. (collectively "PayPal" or "Defendants").

## NATURE OF THE ACTION

1.      Influencers, bloggers, podcasters, YouTubers, and other online content creators ("Affiliate Marketers") earn revenue by promoting the products and services of e-commerce merchants ("Merchants") to their audiences online.  Pursuant to agreements between the Affiliate Marketers and the Merchants, when a consumer clicks on an Affiliate Marketer's affiliate link and then purchases a product or service online from the Merchant, the Merchant is supposed pay a commission for that sale ("Affiliate Commission") to the Affiliate Marketer whose link was clicked. Affiliate Commission amounts can be significant per transaction; some are up to 40% of the sale price.

2.      Unbeknownst to the Plaintiff and the other Affiliate Marketers in the proposed Class, however, PayPal has been serially interfering with this economic relationship and stealing for itself Affiliate Commissions that properly belong to the Affiliate Marketers.  Through a browser extension that it owns and controls, called the "Honey Browser Extension," PayPal has implemented a practice whereby it replaces the Affiliate Marketer's affiliate ID with PayPal's own affiliate ID during the customer's checkout process, thus diverting the Affiliate Commissions to itself, even though it did not promote the product. By this practice, PayPal stole and continues to steal Affiliate Commissions from at least thousands of Affiliate Marketers.

3.      Plaintiff Jose Moran is an Affiliate Marketer.  Through social media platforms including YouTube and TikTok, Plaintiff, together with his son, has promoted products sold by Merchants including EnChroma pursuant to affiliate agreements.  When one of Plaintiff's followers clicks on Plaintiff's affiliate link, the follower is directed to the Merchant's website. If that follower makes a purchase on that Website, Plaintiff is supposed to earn an Affiliate Commission.

4.      When a consumer clicks an affiliate link, the unique affiliate ID of the Affiliate Marketer is passed within the web link URL to the merchant's website. The website receives the

affiliate ID in the link and immediately stores the affiliate ID into a "cookie" (which is persistent storage within the browser specific to the website). That cookie contains a unique affiliate ID identifying the Affiliate Marketer. The purpose of this is so that the Merchant can properly identify and pay the Affiliate Commission to the Affiliate Marketer that created that business opportunity.

5.     PayPal purchased Honey Science Corporation ("Honey") in 2020 for approximately $4 billion.[1] Honey had, by that time, developed a popular browser extension (the "Honey Browser Extension").  Consumers who download the Honey Browser Extension will see a pop-up at checkout when they make a purchase on certain websites.  If they click on the pop-up, Honey ostensibly will tell them if there is a coupon or better deal for the product they are purchasing.

6.     The Honey Browser Extension is of dubious value to consumers.  In many if not most cases where a consumer clicks the Honey pop-up, Honey provides no coupon or deal information to the consumer, or the coupon or code is invalid or expired.

7.     At the time of purchase, the Honey Browser Extension had 17 million monthly active users.[2] Honey claims that the Honey Browser Extension searches the internet for discounts and applies them when a consumer makes an online purchase with one of its more than 30,000 participating retailers. Honey also works with certain Affiliate Marketers to promote the Honey Browser Extension.  Plaintiff is not one of those Affiliate Marketers (i.e., Plaintiff does not have an affiliate relationship with Honey or PayPal).

8.     PayPal's business model for Honey is heavily reliant on the scheme that is at issue in this case.

9.     Pursuant to that scheme, where a consumer is directed to a Merchant by an Affiliate Marketer, and that consumer interacts with the Honey Browser Extension at checkout in any way, PayPal replaces the Affiliate Marketer's unique ID cookie with PayPal's own, and the

---

[1] *PayPal Completes Acquisition of Honey*, PayPal (Jan. 6, 2020), https://investor.pypl.com/news-and-events/news-details/2020/PayPal-Completes-Acquisition-of-Honey/default.aspx.
[2] Sarah Perez, *PayPal to acquire shopping and rewards platform Honey for $4B*, TechCrunch (Nov. 20, 2019), https://techcrunch.com/2019/11/20/paypal-to-acquire-shopping-and-rewards-platform-honey-for-4-billion/.

Affiliate Commission which should be paid to the Affiliate Marketer is diverted to (i.e., stolen by) PayPal. PayPal swaps in its unique ID even though PayPal did not generate the sale, and even when Honey did not find a discount code for the product (and even when there was no reasonable chance of finding a discount code because no such code exists in the Honey database), and even when the consumer simply clicks the "Dismiss" button because no coupon or other offer is made. If the consumer clicks within the Honey extension in any way, the affiliate ID cookie is replaced. By this scheme, PayPal poaches millions of dollars in Affiliate Commissions from Plaintiff and other Affiliate Marketers.

10.     Plaintiff, on behalf of himself and the proposed Class and New York Subclass, seeks money damages and an order enjoining PayPal's abusive and deceptive practices.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the Class is a citizen of a state different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) applies to this action.

12.     The Court also has personal jurisdiction over PayPal because it maintains its principal place of business in this District, has purposely availed itself of the privilege of conducting business in this District, and because many of the specific events giving rise to this action, including PayPal's deliberate diversion of Affiliate Commissions, occurred in this District.

13.     Venue is proper under 28 U.S.C. § 1391(b)(1) because PayPal resides in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## I.     Divisional Assignment

14.     Assignment to the San Jose Division of this Court is proper because Defendants' principal place of business is located in San Jose, California.

**THE PARTIES**

15.     Plaintiff Jose Moran is an Affiliate Marketer.  Plaintiff resides in, and is a citizen of, Yonkers, New York.  Through social media platforms including YouTube and TikTok, Plaintiff, together with his son, has promoted products sold by Merchants including EnChroma and NordVPN, pursuant to affiliate agreements. Plaintiff has earned substantial Affiliate Commissions through these efforts, however PayPal's conduct alleged herein has caused Plaintiff to receive less in Affiliate Commissions than Plaintiff would have received but for PayPal's misconduct.

16.     Defendant PayPal Holdings, Inc. is a Delaware corporation with its principal place of business at 221 North First St. c/o Corporate Legal Department, San Jose, CA 95131.

17.     Defendant PayPal Holdings, Inc. holds all assets and liabilities of Defendant PayPal, Inc., a subsidiary Delaware corporation with its principal place of business at 221 North First St. c/o Corporate Legal Department, San Jose, CA 95131. PayPal Holdings, Inc. and PayPal, Inc. are collectively referred to as "PayPal."

18.     In 2020, PayPal acquired Honey Science Corporation ("Honey") for approximately $4 billion. Unless otherwise noted, the term "PayPal" includes Honey.

**FACTUAL ALLEGATIONS**

I.     **Affiliate Marketers Earn Revenue by Referring Consumers to Merchants.**

19.     Affiliate Marketers earn revenue by working with Merchants to promote the Merchants' products and services to the Affiliate Marketer's online audiences. In effect, Merchants contract with Affiliate Marketers to drive sales. When a consumer uses an affiliate link and purchases a product from the Merchant at issue, the Affiliate Marketer earns an Affiliate Commission from the Merchant.

20.     Affiliate marketing is a massive business. According to one estimate, the market was approximately $9.5 billion in 2023 and is projected to grow to $15.8 billion by 2028.[3]

---

[3] *Affiliate Marketing 101: What it is and How to Get Started*, Big Commerce Team (Dec. 20, 2024), https://www.bigcommerce.com/articles/ecommerce/affiliate-marketing/.

21.     Industry practice is that Merchants award an Affiliate Commission to the person or entity responsible for the last ad that the consumer clicked on prior to purchase. This is called last-click attribution. This means that if a consumer clicks on an Affiliate Marketer's affiliate link and purchases a product, that Affiliate Marketer should earn the Affiliate Commission on the sale.

22.     Merchants use last-click attribution to track how many referrals an Affiliate Marketer makes. The more referrals an Affiliate Marker makes, the more successful that Affiliate Marketer is at driving sales for the Merchant.

23.     Upon information and belief, all of the Merchants with whom Plaintiff works award Affiliate Commissions using last-click attribution.

**II.     The Honey Browser Extension Purports to Help Consumers Find Discounts.**

24.     The Honey Browser Extension is a free browser extension compatible with major internet web browsers.

25.     According to Honey, the Honey Browser Extension scans the internet for discounts and automatically applies the biggest discount at checkout when a consumer shops online with one of Honey's more than 30,000 participating retailers.

26.     To install the Honey Browser Extension, a consumer searches for Honey and clicks "Add to Chrome." This brings the consumer to the Chrome Web Store. The consumer then clicks "Add to Chrome" again to add the Honey Browser Extension.

**PayPal Honey: Automatic Coupons & Cash Back**    

⊘ www.joinhoney.com    4.6 ★ (178.5K ratings)

Extension    Shopping    18,000,000 users

CLASS ACTION COMPLAINT

27.     Once a consumer adds the Honey Browser Extension, it prompts them to shop available deals, participate in the cash-back rewards program, and look for Honey's discount coupons at checkout.

28.     When it is added to a web browser, the Honey Browser Extension can see and change information—including cookies or other tracking tags—on websites accessed by the consumer.



### III.     PayPal Steals Affiliate Marketer Commissions in at Least Three Ways.

29.     The Honey Browser Extension takes advantage of last-click attribution to divert Affiliate Commissions to PayPal. The Honey Browser Extension is deliberately designed to interact with a consumer at the last possible second of the checkout process, which guarantees it will receive last-click attribution. Indeed, PayPal has admitted as much, saying, "If Honey is activated and is the last program used while shopping on a site, it is likely Honey will receive credit for the purchase."[4] In other words, PayPal knowingly uses the Honey Browser Extension to insert itself into a consumer's checkout process, override an Affiliate Marketer's unique ID to win last-click attribution, and poach the Affiliate Commission.

30.     PayPal exploits last-click attribution to divert Affiliate Commissions to PayPal by having the Honey Browser Extension interact with the consumer at checkout through at least three principal strategies.

---

[4] MegaLag, *Exposing The Honey Influencer Scam* (Dec. 21, 2024), https://www.youtube.com/watch?v=vc4yL3YTwWk.

CLASS ACTION COMPLAINT

**A.**    <u>**Searching for Discounts**</u>

31.    In the first strategy, the Honey Browser Extension prompts the consumer to scan for discounts at checkout. When a consumer uses an Affiliate Marketer's affiliate link to arrive at a participating retailer's online checkout, the Honey Browser Extension creates a pop-up, prompting the consumer to scan for discounts.



32.    When a consumer clicks on "Apply Discounts," the Honey Browser Extension surreptitiously opens, and then closes, a small tab in the consumer's browser.



33.    When this occurs, the Honey Browser Extension replaces the Affiliate Marketer's unique ID with PayPal's, causing the Affiliate Commission on the sale to be paid to PayPal.

34.    An investigation into Honey's practices by the popular YouTube channel "MegaLag" shows the mechanics of this scam. MegaLag clicked on an affiliate link from an influencer named "Linus Tech Tips," (with approximately 16 million YouTube subscribers) to purchase computing gear from a Merchant.

3162897.1                                                    CLASS ACTION COMPLAINT

35.     After MegaLag clicked on Linus Tech Tips's affiliate link, the Merchant's page URL contained a "tracking tag" labeled "Short Circuit," which refers to one of Linus Tech Tips's YouTube channels.



36.     The tracking tag for Short Circuit was also saved on MegaLag's browser as a cookie containing the unique ID, "afc-howl-shortcircuit."



37.     MegaLag then used the Honey Browser Extension to search for discounts at checkout. After MegaLag checked for discounts, the Honey Browser Extension replaced Short Circuit's unique ID with PayPal's own unique ID, which would cause the Affiliate Commission to be paid to PayPal, instead of to Short Circuit.



38.    MegaLag's investigation showed that the Honey Browser Extension replaces an Affiliate Marketer unique ID with PayPal's own unique ID even if the browser extension did not find any discounts for the consumer. In that scenario, the Honey Browser Extension creates a pop-up prompting the consumer to click, "Got it!" to close the pop-up. When a consumer clicks "Got it!", the Honey Browser Extension replaces the Affiliate Marketer unique ID with PayPal's own, thus diverting the Affiliate Commission for the sale to PayPal.

**B.    Rewards Program**

39.    In the second strategy, the Honey Browser Extension prompts the consumer to participate in Honey's cash-back rewards program ("Rewards Program"), referred to as "PayPal Rewards," "Honey Gold," and "PayPal Honey." According to Honey, it partners with participating retailers so that consumers can earn points when they make purchases. In reality, the Rewards Program enables Honey to poach Affiliate Commissions even when it fails to find any discounts for the consumer. Honey then shares a tiny portion of the Affiliate Commission with the consumer in the form of points, which the consumer can redeem for cash.

CLASS ACTION COMPLAINT

40.     When a consumer uses an affiliate link to get to a participating retailer's online checkout page, the Honey Browser Extension creates a pop-up prompting them to "Activate Rewards" or "Activate Cash Back." When a consumer clicks the button, the Honey Browser Extension treats that like an affiliate referral and replaces the Affiliate Marketer's unique ID with PayPal's own, thus causing the Affiliate Commission to be paid to PayPal.

41.     Again, MegaLag's investigation demonstrated this scheme at work. MegaLag became an affiliate marketer with a Merchant called NordVPN. As part of that relationship, NordVPN agreed to award MegaLag a 40% commission of every sale made through MegaLag's affiliate link. MegaLag then made two NordVPN purchases using his own affiliate link, one with the Honey Browser Extension and one without it.

42.     In the first purchase, using the Honey Browser Extension, MegaLag used his own affiliate link to arrive at the NordVPN website. Behind the scenes, the unique ID contained in the "aff_id" and "nordvpn_aff_id" cookies was "60397." Upon information and belief, "60397" is the unique ID assigned to MegaLag.



43.     MegaLag then clicked the Honey Browser Extension pop-up to "Activate Cash Back." The browser window reloaded and the unique ID contained in the "aff_id" and "nordvpn_aff_id" cookies changed to "2495." Upon information and belief, "2495" is the unique ID assigned to PayPal. When MegaLag interacted with the Honey Browser Extension, the browser extension replaced his unique ID with PayPal's and poached the Affiliate Commission.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



44.    MegaLag received no Affiliate Commission for the first purchase. Instead, he received 89 PayPal Rewards points, or the equivalent of $0.89.

45.    In the second purchase, without the Honey Browser Extension, MegaLag used his own affiliate link to arrive at the NordVPN website and complete the purchase. Following the purchase, NordVPN awarded MegaLag an Affiliate Commission of $35.60, representing 40% of the sale price.

46.    In other words, when a consumer uses Honey's Rewards Program, the Honey Browser Extension diverts the Affiliate Commission to PayPal and away from the Affiliate Marketer who referred the consumer to the Merchant, and PayPal gives a small fraction of the Affiliate Commission to the consumer in the form of reward points.

**C.    Checkout with PayPal**

47.    In the third strategy, PayPal poaches the Affiliate Commission even when the Honey Browser Extension fails to find any discounts and does not offer the consumer the option to participate in the Rewards Program. In this scenario, the Honey Browser Extension creates a pop-up at checkout prompting the consumer to "Get Rewarded with PayPal" and offering a PayPal "Checkout" button.

48.    The Honey Browser Extension creates this pop-up even when the Merchant's own page already has an option to checkout with PayPal.

CLASS ACTION COMPLAINT



49.     When a consumer clicks "Checkout," the Honey Browser Extension replaces the Affiliate Marketer unique ID with PayPal's own, thus diverting the Affiliate Commission to PayPal.

**IV.     PayPal Stole Plaintiff's Affiliate Commissions Through the Honey Web Browser.**

50.     Plaintiff is an Affiliate Marketer who earns Affiliate Commissions when consumers click on his affiliate links and make a purchase from a Merchant.

51.     In the last couple of years, Plaintiff has earned approximately $1,000 in Affiliate Commissions.

52.     Plaintiff would have earned more Affiliate Commissions but for PayPal's misconduct alleged herein. When a consumer clicks on Plaintiff's affiliate link and interacts with the Honey Browser Extension, PayPal overrides Plaintiff's unique ID and replaces it with its own, thereby guaranteeing itself last-click attribution and poaching the Affiliate Commission.

53.     PayPal has harmed and continues to harm Plaintiff by poaching Affiliate Commissions when consumers interact with the Honey Browser Extension after clicking on one of Plaintiff's affiliate links. PayPal has deprived and continues to deprive Plaintiff of Affiliate Commissions to which Plaintiff is rightly entitled as the person who referred those consumers to the Merchants.

54.     By deliberately poaching Plaintiff's Affiliate Commissions, PayPal reduces the income that Plaintiff should rightfully be making from his referrals. Plaintiff would have earned

more income in the form of more Affiliate Commissions but for PayPal's scheme to poach Affiliate Commissions through the Honey Browser Extension.

55.    Plaintiff continues to devote time and energy to creating online content and generating sales via his affiliate links. As a result, Plaintiff faces future harm in the form of PayPal continuing to poach his Affiliate Commissions by exploiting last-click attribution through the Honey Browser Extension.

## CLASS ALLEGATIONS

56.    This action is brought by Plaintiff individually and on behalf of the following Class and New York Subclass, as defined below, pursuant to Rule 23(a), (b)(3) and 23(b)(2), (c)(4), and (g) of the Federal Rules of Civil Procedure:

> **Class**:    All U.S.-based Affiliate Marketers whose unique affiliate links were replaced by the Honey Browser Extension link at the point of consumer checkout.
>
> **New York Subclass**:    All New York-based Affiliate Marketers whose unique affiliate links were replaced by the Honey Browser Extension link at the point of consumer checkout.

57.    The Class and New York Subclass consist of at least thousands of Affiliate Marketers whose commissions were diverted to PayPal through the misconduct alleged herein and thus is so numerous that joinder of all members is impractical. The identities of members of the Class and New York Subclass can be readily ascertained from business records maintained by PayPal and/or by the Merchants.

58.    The claims asserted by Plaintiff are typical of the claims of the Class and New York Subclass, all of whom were harmed by PayPal's commission poaching conduct alleged herein.

59.    Plaintiff will fairly and adequately protect the interests of the Class and New York Subclass and does not have any interests antagonistic to those of other members of the Class or New York Subclass.

60.    Plaintiff has retained attorneys who are knowledgeable and experienced in consumer protection, class action, and complex litigation.

61. This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the Class and New York Subclass predominate over those questions affecting only individual members. The common factual questions giving rise to common answers that move this litigation forward include:

a. Whether PayPal, via the Honey Browser Extension, replaces the unique ID of Affiliate Marketers with PayPal's own unique ID at checkout;

b. Whether the Honey Browser Extension was knowingly designed to replace the unique ID of Affiliate Marketers with PayPal's own unique ID at checkout;

c. Whether Affiliate Commissions were diverted from the Class members to PayPal;

d. Whether PayPal's poaching of Affiliate Commissions interfered with the contracts and/or business relationships between Class members and Merchants;

e. Whether PayPal has been unjustly enriched to the detriment of the Class; and

f. Whether Class members are entitled to declaratory, injunctive, or monetary relief, and if so, in what amount and form.

62. In addition, the class device is the superior mechanism for handling this action, and a class trial is manageable.

63. This action is also appropriate as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because PayPal's use of the Honey Browser Extension impacts Class and New York Subclass members in the same ways, and any injunctive relief awarded will affect the Class and New York Subclass as a whole.

**COUNT ONE**
**Tortious Interference with Prospective Economic Advantage**
**On Behalf of the Class; Against Both Defendants**

64. Plaintiff incorporates by reference the preceding factual allegations.

65. Plaintiff and Class members are regularly engaged in an ongoing economic relationship with Merchants. When consumers use affiliate links from Plaintiff and Class members to purchase Merchants' products, they are supposed to receive Affiliate Commissions

3162897.1                                                                  CLASS ACTION COMPLAINT

from the Merchants. Plaintiff and Class members expect to continue to earn Affiliate

Commissions in exchange for referring consumers to Merchants.

66.     PayPal knew about this economic relationship.

67.     PayPal uses the Honey Browser Extension to purposefully interfere with the

economic relationship between Plaintiff and Class members, on the one hand and Merchants, on

the other hand. PayPal purposefully and unlawfully replaces the unique IDs that identify Plaintiff

and Class members—and which are required for them to be paid Affiliate Commissions—with its

own unique ID. As a result, PayPal poaches the Affiliate Commission even though it did not refer

the consumer to the Merchant.

68.     Plaintiff and Class members have suffered, and continue to suffer, actual damages,

including but not limited to the loss of Affiliate Commissions, as a direct and proximate result of

PayPal's deliberate interference.

69.     Plaintiff and Class members are at risk of future harm in the form of lost Affiliate

Commissions and future economic opportunities because PayPal continues to purposefully use

the Honey Browser Extension to poach Affiliate Commissions and artificially depress Plaintiff

and Class members' referrals and Affiliate Commissions.

70.     Plaintiff and Class members are entitled to recover their actual damages,

consequential damages, punitive damages, injunctive relief, attorneys' fees, costs, and any other

relief that the Court deems appropriate.

**COUNT TWO**
**Conversion**
**On Behalf of the Class; Against Both Defendants**

71.     Plaintiff incorporates by reference the preceding factual allegations.

72.     Plaintiff and Class members were, and continue to be, entitled to Affiliate

Commissions for specific and ascertainable amounts when they referred consumers to Merchants

and those consumers purchased products or services from Merchants.

73.     Plaintiff and Class members had and have a right or interest in Affiliate

Commissions of concrete, readily identifiable sums, which they earn when consumers purchase

Merchants' products using Plaintiff and Class members' affiliate links.

CLASS ACTION COMPLAINT

74.     PayPal intentionally and substantially interferes with Plaintiff and Class members' personal property by using the Honey Browser Extension to replace the unique IDs associated with Plaintiff and Class members with its own unique ID, thereby diverting Affiliate Commissions from Plaintiff and Class members to PayPal.

75.     Through its Honey Browser Extension, PayPal assumes and exercises the right of ownership over these Affiliate Commissions without justification or authorization.

76.     PayPal's wrongful exercise of control over Plaintiff and Class members' personal property constitutes conversion.

77.     Plaintiff and Class members did not expressly or impliedly assent to or ratify PayPal's wrongful conversion of their Affiliate Commissions.

78.     Plaintiff and Class members are harmed and will continue to be harmed by PayPal's ongoing conduct as a direct and proximate result of PayPal's conversion using the Honey Browser Extension.

79.     Plaintiff and Class members are entitled to recover damages and costs permitted by law, and to injunctive relief to halt future conversion by PayPal as a result of its ongoing conduct.

**COUNT THREE**
**Unjust Enrichment**
**On Behalf of the Class; Against Both Defendants**

80.     Plaintiff incorporates by reference the preceding factual allegations.

81.     Plaintiff and Class members lack a fully adequate remedy at law.

82.     Plaintiff and Class members have a legal and equitable interest in the Affiliate Commissions that PayPal wrongfully poached. Plaintiff and Class members rightfully earned, and continue to earn, those Affiliate Commissions—not PayPal.

83.     PayPal has been and continues to be unjustly enriched by the Affiliate Commissions that it continues to take by wrongfully overriding Plaintiff and Class members' unique IDs and replacing them with its own. PayPal continues to benefit from its wrongful behavior and profit off of its use of the Honey Browser Extension to the detriment of Plaintiff and

1   Class members. PayPal's poaching of Affiliate Commissions is ongoing and each diversion harms

2   a Class member and enriches PayPal at that Class member's expense.

3       84.     PayPal is aware that it benefits from its wrongful taking of Plaintiff and Class

4   members' Affiliate Commissions.

5       85.     But for PayPal's wrongful use of the Honey Browser Extension, Plaintiff and

6   Class members' Affiliate Commissions would not have been, and continue to be, diverted to

7   PayPal.

8       86.     It would be inequitable for PayPal to retain the benefit of its wrongdoing.

9                                    **COUNT FOUR**
                        **Tortious Interference with Contractual Relations**
10                      **On Behalf of the Class; Against Both Defendants**

11      87.     Plaintiff incorporates by reference the preceding factual allegations.

12      88.     Plaintiff and Class members have contractual agreements and business

13  relationships with Merchants pursuant to which Plaintiff and Class members help drive

14  Merchants' sales by promoting Merchants' products and services such that consumers use

15  Plaintiff and Class members' affiliate links to purchase Merchants' products and services, and in

16  exchange the Merchants provide Plaintiff and the Class Affiliate Commissions. These contracts

17  and business relationships are ongoing.

18      89.     PayPal knew about these contractual and business relationships. Specifically,

19  PayPal knew that Plaintiff and Class members work with Merchants to drive consumers to

20  Merchants' websites via affiliate links. PayPal also knew that Plaintiff and Class members receive

21  Affiliate Commissions for these efforts that tracked by their unique IDs, and that Merchants use

22  last-click attribution to assess the success of Affiliate Marketers including Plaintiff and Class

23  members.

24      90.     PayPal intentionally disrupted, and continues to disrupt, Plaintiff and Class

25  members' performance of their contractual and business obligations, and/or knew that its actions

26  made Plaintiff's and the Class members' performance less fruitful and beneficial, and more

27  expensive, difficult, or impossible. Since PayPal deploys the Honey Browser Extension at the end

28  of a consumer's checkout process, it is virtually guaranteed to override Plaintiff and Class

1    members' unique IDs to win last-click attribution and poach the Affiliate Commissions. PayPal

2    intentionally poached and continues to poach Affiliate Commissions from Plaintiff and Class

3    members through the conduct alleged herein, or knew that its conduct would poach Affiliate

4    Commissions from Plaintiff and Class members. PayPal's intentional conduct also artificially

5    deflates Plaintiff and Class members' referrals, causing Plaintiff and Class members to appear to

6    be underperforming.

7        91.    PayPal's conduct harmed and continues to harm Plaintiff and Class members.

8        92.    Plaintiff and Class members suffered and continue to suffer economic injury as a

9    direct and proximate result of PayPal's misconduct.

10        93.    Plaintiff and Class members are entitled to recover damages and costs permitted

11    by law, and to injunctive relief to halt future interference by PayPal as a result of its ongoing

12    conduct.

13                                    **COUNT FIVE**
                        **Violation Of Cal. Bus. & Prof. Code §§ 17200** *et seq.*
14                          **On Behalf of the Class; Against Both Defendants**

15        94.    Plaintiff incorporates by reference the preceding factual allegations.

16        95.    PayPal's conduct described herein violates the "unfair" and "unlawful" prongs of

17    California's Unfair Competition Law (the "UCL"), codified at California Business and

18    Professions Code §§ 17200, *et seq.*

19        96.    By its conduct alleged herein, PayPal has violated the "unfair" prong of the UCL,

20    including without limitation by poaching Affiliate Commissions from Plaintiffs and the Class

21    members.

22        97.    PayPal's conduct alleged herein is immoral, unethical, oppressive, unscrupulous,

23    unconscionable, and substantially injurious to Plaintiffs and the Class members.  By its conduct

24    alleged herein, PayPal has already stolen at least several millions of dollars belonging to the

25    Class.  There is no utility to PayPal's conduct, and even if there were any utility, it would be

26    significantly outweighed by the gravity of the harm caused by PayPal's conduct alleged herein.

27        98.    PayPal's conduct alleged herein also violates California public policy, including as

28    such policy is reflected in Cal. Civ. Code §§ 1709-1710 and California common law relating to

fraud, unjust enrichment, interference with economic and contractual relationships, and conversion.

99.     By its conduct alleged herein, PayPal has also violated the "unlawful" prong of the UCL, including by violating California common law relating to fraud, unjust enrichment, interference with economic and contractual relationships, and conversion.

100.    By its conduct alleged herein, PayPal proximately caused harm to Plaintiffs and the Class members, including by stealing Affiliate Commissions that rightfully belong to Plaintiffs and the Class members.

101.    As a direct and proximate result of PayPal's unfair and unlawful conduct, Plaintiffs and the Class members lost money and property in which they have a vested interest.

102.    Plaintiffs and the Class lack an adequate remedy at law.

103.    Plaintiffs seek an order granting restitution to Plaintiffs and the Class in an amount to be proven at trial, including for the amounts of the Affiliate Commissions that PayPal has stolen from them by its conduct alleged herein.

104.    PayPal's conduct has caused substantial injury to Plaintiffs and the Class. PayPal's conduct is ongoing and will continue absent a permanent injunction.  Accordingly, Plaintiffs seek an order enjoining PayPal from continuing its misconduct alleged herein.

105.    Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

**COUNT SIX**
**Violation Of New York General Business Law § 349**
**On Behalf of the New York Subclass; Against Both Defendants**

106.    Plaintiff incorporates by reference the preceding factual allegations.

107.    Plaintiff and the New York Subclass members are "persons" within the meaning of N.Y. BL §349(h).

108.    N.Y. GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

109.    PayPal has engaged in acts in violation of N.Y. GBL § 349(a) by its Affiliate Commission poaching and related misconduct alleged herein.

110.    PayPal's violations of GBL §349(a) have directly, foreseeably, and proximately caused damages and injury to Plaintiff and the New York Subclass members.

111.    Plaintiff and the New York Subclass members are entitled to pursue claims against PayPal for damages, statutory damages, treble damages, exemplary damages, injunctive relief, costs and attorneys' fees pursuant to GBL §349(h) to redress PayPal's violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks that this matter be certified as a class action, and that his attorneys be appointed Class Counsel and that he be appointed a Class Representative, and Plaintiff demands judgment against Defendants as follows:

1.      Awarding Plaintiff and the proposed Class and New York Subclass actual damages, statutory damages, restitution, disgorgement of profits, attorneys' fees and costs, and any other relief that may be permitted by law or equity pursuant to the claim(s) for relief;

2.      Permanently enjoining PayPal from engaging in the misconduct alleged herein;

3.      Awarding Plaintiff and the proposed Class and New York Subclass pre-judgment and post-judgment interest pursuant to the claim(s) for relief;

4.      Awarding Plaintiff and the proposed Class and New York Subclass costs, expenses, and attorneys' fees as permitted by law;

5.      Awarding Plaintiffs and the proposed Class and New York Subclass punitive, exemplary, and treble damages as permitted by law;

6.      Awarding Plaintiff and the proposed Class and New York Subclass further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial for all claims so triable.

3162897.1                                                              CLASS ACTION COMPLAINT

1    Dated:  January 14, 2025              LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

2

3                                          By:    */s/ Roger N. Heller*
                                                  Roger N. Heller
4

5                                          Elizabeth J. Cabraser (State Bar No. 083151)
                                           Roger N. Heller (State Bar No. 215348)
6                                          LIEFF CABRASER HEIMANN &
                                           BERNSTEIN, LLP
7                                          275 Battery Street, 29th Floor
                                           San Francisco, CA 94111-3339
8                                          Telephone: (415) 956-1000
                                           ecabraser@lchb.com
9                                          rheller@lchb.com

10                                         Jason L. Lichtman (*pro hac vice* forthcoming)
                                           Danna Z. Elmasry (*pro hac vice* forthcoming)
11                                         LIEFF CABRASER HEIMANN &
                                           BERNSTEIN, LLP
12                                         250 Hudson Street, 8th Floor
                                           New York, New York 10013-1413
13                                         Telephone: (212) 355-9500
                                           jlichtman@lchb.com
14                                         delmasry@lchb.com

15                                         *Attorneys for Plaintiff and the Proposed Class*

16

17

18

19

20

21

22

23

24

25

26

27

28